IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> SALVADOR CRUZ-MEJIA, ) <br> ) <br> Defendant. ) <br> _____ ) | No. CR 11-350-TUC-CKJ <br><br> **ORDER** |

Magistrate Judge Jacqueline Marshal issued a Report and Recommendation (Doc. 38) on July 5, 2011, in which she recommends that the Court grant in part and deny in part Defendant's Motion to Suppress (Doc. 20). An objection and a response have been filed.

*Consent for the Initial Entry by Officers*

Defendant Salvador Cruz-Mejia ("Cruz-Mejia") disagrees with the magistrate judge's conclusion in the report that the officers received consent to enter the residence. Cruz-Mejia asserts that mere submission to a show of authority does not amount to consent. However, as discussed by the magistrate judge, this case does not involve mere submission. Rather, the officers, unlike in *United States v. Shaibu*, 920 F.2d 1423 (9th Cir.), *amended*, 912 F.32d 1193 (1990), requested entry. Indeed, when Sergeant Art Esquivel ("Esquivel") explicitly asked the person if the officers could enter the home, the person let the officers in:

    Q (Jones)    Now, I have – in terms – you knock on the door, Mr. Cruz-Mejia opens the door, and you tell him why you're there?

    A (Esquivel)    That is correct.

| | | |
|---|---|---|
| 1 | Q | And he just let you in? |
| 2 | A | After we requested permission to enter, yes, he did. |
| 3 | Q | Okay. How did he manifest that? Did he step away, did he say yes, what happened? |
| 4 | A | I'm not sure exactly his demeanor or – I mean not his demeanor, but I'm not sure exactly his body posture, but – but it was what we consider a voluntary consent to enter the residence. |
| 5 | Q | Okay. I mean, he – did he just back away from the door and left it open? |
| 6 | A | Either backed away or he stepped aside or some – something to that – to that effect. |
| 7 | Q | Okay. And then once he was out of the way, you just walked in to the door? |
| 8 | A | Correct. |

June 21, 2011, Hearing Transcript, Vol. I (TR), pp. 26-27. Moreover, the person answering the door was cooperative. *Id*. at p. 13, l. 4. The Court agrees with the magistrate judge that the government has established that the officer had consent to enter the residence.

*Plain View of the Gun Behind the Door*

Cruz-Mejia asserts that the gun was not in plain view and that criminal nature of the gun was not immediately apparent. During the hearing, Esquivel testified:

| | | |
|---|---|---|
| | A (Esquivel) | I specifically asked him was there – was there any weapons or drugs inside the house. |
| | Q (Aguilar) | And is that something you commonly ask once you gain access into a house? |
| | A | That is correct. |
| | Q | And what was his response? |
| | A | He indicated without any – any prompting from us that there was a – there was a rifle behind the door, the entry door to the – to the house. |
| | Q | Okay. Now how would you describe this house? Is it a big house? |
| | A | No, it was a – a small house. The – the front door led directly into the living room, the kitchen was a little bit to the – to the east of the living room. You had a hallway. There was a bathroom in the hallway and I |

- 2 -

| 1  |         | believe there was two bedrooms towards the – towards the south end of the residence. |
|----|---------|---|
| 2  |         | |
| 3  | Q       | Okay. Now, was – you had the conversation with him, the Defendant, he tells you that there was a weapon behind the door? |
| 4  | A       | That is correct. |
| 5  | Q       | What do you do? |
| 6  | A       | At that point we looked behind the door and without manipulating anything at all, the weapon was just leaning up against the wall in plain sight. |
| 7  |         | |
| 8  | Q       | Okay. Was it in plain sight prior to you being made aware that the weapon was there? |
| 9  |         | |
|    | A       | Yes, it was. |
| 10 |         | |
|    | Q       | Okay. So you saw the weapon there before? |
| 11 |         | |
|    | A       | No, we didn't see the weapon when we first walked in. Like I said, when – when we opened – the door opened into the – into the residence. So when the door opened up, it would have – it would have covered up the weapon. Well, not covered up, but it would have blocked the weapon. |
| 12 |         | |
| 13 |         | |
| 14 |         | |
|    | Q       | Okay. |
| 15 |         | |
|    | A       | So we closed the door, and we didn't look behind the door, I mean, but that's where the weapon eventually was located. |
| 16 |         | |

17 *Id.*, pp. 15-17. Furthermore, Officer Patrick Pina ("Pina") testified:

| 18 | The Court | And when you went into the house and saw the weapon behind the door, was it immediately apparent to you that that weapon itself, that there was something illegal about possession that weapon if you didn't already know the person was in the country illegally, just by the weapon itself? |
|----|-----------|---|
| 19 |           | |
| 20 |           | |
| 21 | A (Esquivel) | No. |
| 22 | The Court | Okay. And there's a couple of exhibits here, there's 2 and 3, and they appear to be of the assault rifle. But one of them, there's a baby carriage in front of it, one there's not. Which one was – what did it look like when you walked in there? Obviously this was moved at some time. |
| 23 |           | |
| 24 |           | |
| 25 | A         | Yes, it was, Your Honor. I don't remember if it was moved – I don't remember exactly. |
| 26 | The Court | Because if the door was open it would hit the baby carriage and it wouldn't – |
| 27 |           | |

- 3 -

| | | |
|---|---|---|
| 1 | A | Yes. |
| 2 | The Court | – completely hide the weapon, so obviously that's important. Could you tell if it was against something such that you could see it where it was if the baby carriage was there without having to move the door? |
| 3 | | |
| 4 | A | Yes, I – I don't remember it. |

*Id.*, pp. 79-80. The Court has reviewed the exhibits and agrees with the premise stated by the magistrate judge: while the baby carriage and door could limit access, when the point of view was changed, the gun was in plain view.

Moreover, "the officers had 'probable cause to believe' [the evidence was] associated with criminal activity." *United States v. Stafford*, 416 F.3d 1068, 1076 (9th Cir. 2005), *quoting Horton v. California*, 496 U.S. 128, 131 n.1 (1990). The Ninth Circuit has recognized that there is a "close relationship between drugs and firearms in the narcotics trade." *United States v. Simpson*, 10 F.3d 645, 647 (9th Cir. 1993), *vacated on other grounds*, 513 U.S. 983 (1994). In this case, Pina testified that they had gone to the house with the belief that it may be a drug house. TR, p. 60. Esquivel testified that he observed a baggie of marijuana hidden in the curtain area by the front door area. *Id.* at 21. There was a reasonable basis for the officers to infer that the gun was tied to a criminal purpose. The Court agrees with the magistrate judge that the gun was in plain view and that there was probable cause to believe it was associated with criminal activity.

*Seizure of the Gun*

Cruz-Mejia argues that even if the officers say the gun in plain view and its illegal nature was immediately apparent, the officers did not have a right to seizure the gun. However, "[e]vidence may be seized without a warrant . . . when it is within 'plain view.'" *United States v. Garcia*, 205 F.3d 1182, 1187 (9th Cir.), *cert. denied*, 531 U.S. 856 (2000). Indeed, the Supreme Court has stated that "[t]he plain view doctrine authorizes *seizure* of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is

connected with criminal activity." *Illinois v. Andreas*, 463 U.S. 765, 771, 103 S. Ct. 3319, 77 L. Ed. 2d 1003 (1983), *emphasis added*.

Accordingly, after an independent review, IT IS ORDERED:

1.  The Report and Recommendation (Doc. 38) is ADOPTED.

2.  The Motion to Suppress (Doc. 20) is GRANTED IN PART AND DENIED IN PART. Evidence of the rifle located by the front door in plain view shall not be suppressed. Evidence of the remaining guns shall be suppressed.

DATED this 7th day of September, 2011.

_____
Cindy K. Jorgenson
United States District Judge